The case this morning is Acufloor v. EvenTile and 4PAC, 2023-1887. Ms. McComas. Good morning. May it please the Court. I guess from statutory construction to claim construction. Today this appeal centers on two claim construction issues, majority of the area and tile edge. I'm going to go straight to majority of the area unless the Court wishes to go a different direction. I hate to read the whole thing because I know you're well prepared, but it's helpful to put the term we're talking about in context. It's the combination of the first notch and the second notch providing a majority of the area of tile to mortar to subfloor contact for the leveling device within the bounds of the base. The District Court concluded that that means the notches in the base collectively span an area that is larger than the solid portion of the base. It helped me to look at that in a picture format. If you look in the reply brief at page 4, there's an example of that that I think makes it easy to talk from. Basically what the District Court concluded is that the blue area has to be larger than the black area. She reached that determination in barely one page of analysis that was all focused on the prosecution history. That's wrong. We know you start your claim construction from the patent claims and the specification. That's where we start. When you start there... To be fair, in the prosecution history, I think it's correct that the examiner suggested an amendment that would capture what the District Court says is the correct claim construction. Isn't that what was suggested to you from the examiner? That's fair. The examiner suggested it. We didn't follow the suggestion. That's why we're here today. I don't want to lose sight of the specification, which the District Court overlooked. There's nothing in the opinion that gets you to... I'm sorry, the claim language itself. There's nothing that gets you to this discussion in the context of our brief opinion below. It's real simple. The combination of the first and second notches, that's the blue area, provides the majority of the tile-to-mortar subfloor contact within the bounds of the base. That's the red outlined area. That's what it says. If AccuFloor had wanted to claim a device where the notches covered more than the base, they didn't need the words tile-to-mortar-to-subfloor contact. Those would be superfluous under that construction. Let's talk about the prosecution history. I know you're dying to get there, right? I'm very interested in the edge issue. Please save a good deal of time for the edge issue if you would. It seems to be more complex than the area issue. I'm not satisfied on the prosecution history for the majority of the area, so I'm fine if we turn to edge. Then we will turn to edge. I agree, there was substantially more briefing on the issue of edge. Again, tile-edge, the district court construed it to mean a line at which a surface of a tile terminates. That, too, was error. Edge simply means edge to a person of ordinary skill in the art. The district court understood that when deciding corner. The arguments were almost the same with respect to corner. There was dispute. Our opponents argued that it had to be just the very tip. We argued the same thing, that because tile, and when you're in the tile industry, you're worried about breakage on the ends, that it has to be something more than just the very tip. The judge found plain and ordinary meaning consistent with those arguments on corner, but then when she switched to edge, her only reason to not find the same thing with respect to edge was because of the prosecution history. But let's start again. Our decision has no analysis of the actual patent in the specification. Well, let's turn to Figure 11A, which is a big part of your argument. Correct. Now, my problem with your reliance on Figure 11A, just to cut to the chase, is that 11A was in the specification from before the time that you amended with respect to the edge issue, and you put the edge limitation into the claims. Now, that, to me, suggests that perhaps 11A has been, in effect, overridden by a reduction in the size of what you're claiming. So I'm glad you raised that, because that was also confusion by the district court, I think. The claim amendment that we're referencing, which is at Appendix 1350 through 1353, didn't add edge. Edge was already there. Right, but what it said was, and importantly, and why Figure 11A may not be applicable anymore, is that it says that up to the edge, there has to be a connection between the tile and the mortar and the subfloor. So in the Figure 11A, you point out in your brief, well, there's a section there in which the tile is not connected to the mortar and the subfloor, but after the amendment, at least arguably, that no longer is true as to what you're claiming. So that's my question to you, is why isn't that enough to discredit, if you will, the application of 11A to your argument about the scope of the new claim limitation that was added? Can I ask you to focus me in on the language you're looking at? The language of the claim? No, the amendment that you're focused on. Yeah, the claim amendment. It shows up. At 1350 through 1353? Yeah, why don't you tell us where you think the edge language is added? The edge language existed at the beginning of this prosecution. The claim language that I think you're focused on, and that's why I'm trying to hone in and make sure I'm talking about the right place in the record. If you go to 1350 through 1353, which is what the district court relied on as a change, you can see that Claim 5, it moves edge. Edge was already there, it just was moved. So am I focused on the wrong spot? No, let me just get the language that I think we're focusing on here. I want to make sure I'm responding to the right amendment and the right question. Yeah, the language I'm focusing on is the language that says the notch will provide first tile edge to mortar to subsurface contact, right? And that would suggest to me that saying that the figure 11A demonstrates that there does not have to be that kind of contact between the very edge of the tile and some area farther in on the tile. To me, that's a problem for your proposed construction. Give me just one second to get through those pages. If I'm following, I think Judge Bryson's reading from 1352. I think I'm with you. In Claim 5, the underlined language, the first notch providing first tile edge to mortar to subfloor contact. You see that? Yes. My question, relatedly, is are you saying that's not amendment language that was always in the claims? Ray, if you look down at what's being marked out, the tile edge to mortar to subfloor contact was there. They just adjusted where it was in the claim. The bottom line of page 5? Correct. A first tile, what they replaced. A first tile over the base to the front of the body. The first tile having a first surface. Where are you reading? Immediately below where you were reading, what was marked out. Bottom of 1352, carry on to 1353. Correct. If I understand, your first argument is we didn't change claim scope at all with this amendment? Right. This amendment, we didn't change claim scope with respect to edge. That's not what's happening there. What's happening there is we're actually adding majority of an area. And we're adding a new claim that doesn't have edge at all. Do you want to proceed? Yes, sir. I hope that answered your question on that issue. There were other things that the district court relied upon. I want to make sure I'm focusing on the ones that concern you the most. Certainly, the district court relied on three things in particular. She relied on the agenda that was before the examiner, and we talked about that. This video, first of all, I take it your view is it's intrinsic evidence because the examiner looked at it during prosecution? Correct. It was part of the prosecution. It was part of the argument to the prosecution to explain how. I listened to the video, and it seems like whoever's talking is talking in a manner that is, I don't know, maybe equally consistent with edge being the very edge line of the tile or potentially including some additional area. I understand that to be the dispute between the parties, but I thought that video could be probably understood either way. What do I do with that? You go back to the preferred embodiments, and you look at Figure 11A, and you realize that what's disclosed in the patent itself is a tile that, even though it discloses edge, reaches all the way up to that plastic and leaves a space where there's something between. There's some piece at the end that doesn't get mortar. Is it possible that the answer here turns on who is the person of ordinary skill in the art, and was there any discussion of that issue? Was that in dispute in the trial court? Yes, the district court didn't consider it, but we put in an expert declaration that explained why a line would not work, and that's in the 650 to 653 range. I didn't see your expert opine on who is the person of ordinary skill in the art here. Is it someone who lays tile? Is it someone who designs these plastic inserts? Is it somebody else? Was that at all an issue? To my knowledge, it just wasn't in dispute. I don't think anybody challenged that he was an expert. It just simply wasn't addressed because the judge was caught up on the prosecution history, perhaps the same thing you were looking at. I'm down to my rebuttal time. Any further questions? We will save you rebuttal time. Thank you. Mr. Mannhaus. Good morning. May I please report? I want to just dive into EDGE and correct what happened here in the prosecution history. So EDGE was actually added first. What you were looking at when you were in the colloquy there was the March 2020 amendment to the 274 patent. In fact, that EDGE term had been added earlier to that patent, and also it had been first entered into the other patent, the 857 patent, and that's actually what I think is the most telling thing of all. Can you tell us where to find those amendments?  So the original amendment that added EDGE is at Appendix 700-718, and this also includes those exhibits to Hoffman that we talk in our briefing, and that's at 1045-59. And what's critical here is that in adding it, to say what the EDGE term was getting at, at 1052 the applicant pointed to Hoffman and pointed to that ledge on which the tile rests and says, edge of tile rests here, no tile to edge contact. And then on 1050, it points to Figures 3 and 5 of the patent where the notch is flush with the edge and says, tile rests here, tile to edge to subfloor contact. So they are clearly delineating when they first added the amendment and added this term that what the difference is is getting flush to the edge, getting the edge right to the end of the tile terminating there, and that's what's on point, not Figure 11. Figure 11, as Judge Bryson said, existed before they disclaimed from it, but furthermore, it's not even excluded in the first place. If you look at Appendix 122, which is Columns 4 and 5 of the 274 patent, it talks about that figure. It's not a preferred embodiment. At line 44, it just says it's one embodiment. And in explaining the spacing pads, which is where this entire argument comes from, is like what distance are they set apart, it says at line 65 to 67, spacing pads such as spacing pads 152 may be utilized to position the tiles a predetermined distance apart depending on their application. It doesn't say anything about where they actually essentially need to be. Do they need to be offset from the notch or anything like that? So Figure 11 is not to scale. Do you contend that after the edge amendment, that Figure 11A embodiment is not within the scope of the claims? I think that precise visual depiction maybe isn't. But the written description says that the spacing pads don't have a set distance. So in explaining what Figure 11 is doing, the patent doesn't say that they need to be offset that amount. So the general idea of having these spacing pads isn't excluded at all. I'm not sure I understood your answer. You're saying that 11A is no longer a viable embodiment of the amended claims? If you were to have the spacing pads offset such that you had a sort of ledge of the notch. Well, that's what 11A looks like, at least to me. It looks like there's a ledge there between the groove where the grout goes and the first X number of millimeters of tile. Correct. So I totally understood. And I would just say three things in response to that. It's fine if it's excluded for precisely the reason you said, how they made the amendment. It's just an embodiment, not a preferred embodiment, so it's not a problem to exclude it. And I guess my broader point when I'm getting to the written description is I'm just saying that visual depiction that's excluded doesn't sort of speak to the entirety of what Figure 11 is trying to get at because it has this statement about what the spacing pads are doing and it's saying they can just be set at a distance. And so it's not saying it has to be that distance that's actually depicted in the figure. It's allowing for them to have variable distance, which would include coming right up to the end of the notch, which is precisely what we say to tile the edge to mortar subsoil contact is required. In the prosecution history, is there ever any reference to the edge being at the very edge of the tile or to a line at the very edge of the tile? The district court says that the applicant made clear during the prosecution history that the edge is a line at the very edge of the tile, but I can't find anywhere in the prosecution history where the applicant or even the examiner said that. So I think the closest thing is not the video. It's this Hoffman Figure 3, Figure 4 comparison, which is an appendix. 1050 is the figures and the patents annotated by the applicant, and then 1052 is the Hoffman reference annotated by the applicant to show the distinction. But as to the video, I agree with you that the video is a bit of a jumble, but clearly they are trying to distinguish those other prior art references by saying they don't get close enough. And I think the clearest depiction is 1086, where they're showing that their device's notch goes all the way to the edge. And if it's a region, which is what they say, I mean, there's no basis for the fact file to distinguish what reads on the prior art versus what reads on the claim. Because if you look at 1081, for example, where they're all lined up together, they're all in the same region. But that seems to me is a fact dispute. You could have regions of different space, different areas. The only burden you have, and you persuaded the district court, is we need to agree that edge is limited to just a line at the very edge with no area at all. And, again, I see nothing in the prosecution history where anybody advocated that position, where it was suggested by the examiner, where it was stated by the applicant. And all the things you pointed me to seem to me equally consistent with we're preserving at least a little bit of area. We can argue about how much. But we're not limiting ourselves to just the line at the very edge. Well, Judge Stark, two things. One, I would urge you to look at the comparison to Hoffman and the figures. I think that is the critical thing. Hoffman clearly leaves a lot of it. I mean, a lot is my word. There's clearly some area where the mortar is not going to reach, correct? Correct. But I think the important point is then what do they point to to contradistinguish Hoffman? It's at 1050, and that's Figures 3 and 5, where they're pointing to the notch coming flush with the very termination point of the tile and saying that is the subfloor contact. And in their explanation at Appendix 714, where they explain this comparison, they say that they're illustrating their edge-to-floor subcontact through these two exhibits. But again, they never say we're showing you that we are at the very edge and that Hoffman or Duda or anything else is not, correct? They never say that. They do not use those precise terms, but I think the supports are reading more than theirs, especially because we're not in the world in which edge has a plain and ordinary meaning. The other side has conceded that edge can mean a line. It could mean a region. So we're just looking at what is the intrinsic evidence best support. How about a slight tweak to the district court's construction, not simply edge being a line, but edge being an area that includes the line at which the tile terminates. In other words, a small area leading up to the line, which is the end of the tile. Judge Bryson, I think that is a totally fine way of reading it, and I think that's what actually the district court's construction is effectively getting at, because remember a notch is defined as something that starts from the other end of the base, and this is requiring tile edge contact. So the notch has to go all the way continuously to the termination point, just like you're saying. There's no space or gap allowed. If we were to adopt that construction, changing the district court's construction, albeit perhaps not in a dramatic way, but to some extent, wouldn't we have to send this back for the district court to determine whether under our modified construction, the accused device still does not infringe? No, because as I said, I think... The stipulation wouldn't cover it anymore, right? Because the stipulation is only directed to her construction. So wouldn't we have to go back? Maybe you would win on a further stipulation, or maybe it's quite clear that you wouldn't infringe, but it seems to me it's hard for me to see why we wouldn't have to send it back. On the precise terms of the stipulation, I suppose you're correct, but functionally what you stated to be the construction is what the construction already provides, because as I said, the construction of notch is not disputed. That requires the notch to start at one end of the base. The district court's construction just requires the notch then to go all the way to the edge of the tile, effectively by having to touch that line, pry that contact there. So what you are... I think the construction you're proposing just sort of flushes out the interplay between those two constructions, which already is sort of mandated by what the district court's already said. So I don't think there's actually a functional difference between what you're saying and where we're currently at. I don't think I understand that answer. The district court construed edge as the line at which a surface of the tile terminates, and just the line, correct? That was her construction. Correct, but what I'm getting at, Your Honor, Judge Stark, is notch was construed as an opening intersecting an edge of the base through which mortar can penetrate. So that's at the other end. So effectively, by construing edge to reach the tile edge, there has to be a continuous amount of mortar that goes from one end to the other. There can't be a space or gap at the end. What I understood the stipulation of non-infringement to mean was that your accused device does not allow the mortar to reach all the way to that line at which the tile terminates. Correct. If we were to say the correct construction actually includes some undefined amount of area... I didn't take Judge Bryson to be proposing that, but maybe I misunderstood. Well, suppose that the construction is, and what I was trying to get at probably didn't articulate very well, but suppose the construction is that it has to be some area that includes up to and... So gets to the line. Gets to the line. So I think that answers Judge Stark's question. If that's true, then we don't get to the line. The line is still the critical sort of... Okay, if the construction, we were to say, is that it still has to get to the line, then you would say we don't infringe. If instead the construction were the edge includes the line but is not limited to the line, then there'd be a fact dispute as to whether the mortar gets to that area that we would now say is the edge. Sure. And I think there we're just inviting indefiniteness because we're in this situation where the fact finder can't distinguish between what Doda, Sala, Hoffman, all these other references... Did you assert an indefiniteness? We did. The district court didn't reach it yet, is that right? Correct, but I think it's a reason not to go that way. It's sort of a motivation of why... The goal of claim construction is to provide clarity, not confusion, and we're just inviting that confusion by going there. Counsel, do you want to defend the majority of an area? Yes, if there's no further questions on edge. I think the starting point here is, again, there is no plain language to this term, so we don't require disclaimer or disavow. I think the district court's construction parses this language in a way that it can be read. It requires two things. One, that the notches provide a majority of an area for the device within the bounds of the base, and two, that that area needs to be tiled and mortared to subfloor contact. We're not reading out the words of the type of contact required. We're just reading it as sort of this descriptive requirement on what the majority is. So that is a way to parse the language, and then the question is just, what does the intrinsic evidence say about what is the better reading? We're not in the land of clear and unmistakable disclaimer. We're just in the usual world of using the intrinsic evidence to figure out what the answer is, and there, the written description and prosecution history only support us. There is no affirmative evidence for their construction. The specification nor the prosecution history never makes any comparison to other holes relative to the notch and how much contact they provide. That statement, there's no statement of that. There's no embodiment like that? It's not expressly in there, but it's a comprising claim, and an embodiment in which there were holes that provided sort of negative space in the base and notches would be within the scope of these embodiments. I totally understand that point. I'm just making a more modest point, which is that there is no indication that they were contemplating ever any sort of comparison, including Judge Stark, as I think you pointed out, at Appendix 750 where the examiner explicitly suggested the amendment which reads on the district court's construction. You would expect, then, if the applicant wanted to say that's not what we meant in their remarks, they would have said that's not what we're doing. We're doing something else, but they never did. But they didn't adopt the words that the examiner proposed, did they? They didn't, but they did make statements that go to the overall amount of tiled and mortar-to-subfloor contact, not where the contact came from. Never in making any of the remarks responding to that suggestion did they say we're different because our notch provides the contact more than Sala's holes or anything like that. And, in fact, fundamentally it doesn't make any sense to parse it as this relative comparison to other holes because the only benefit they ever identified in the prosecution history or their briefing is that notches provide that contact. They just want to maximize that contact. They say that notches are what do it, but if you're already presupposing that there's other holes that would be providing that contact, there's no basis in the prosecution history to say that you want notches to be doing it as opposed to other openings. So, fundamentally, it doesn't make any sense. And I think, just like a sort of another baseline principle as to both terms, is if there is truly a state of equipoise in terms of analyzing the intrinsic evidence and whose construction is better, then under the principles and athletic alternatives and others, this court defers, goes with the narrower construction. And ACCUFLOR has admitted that both of its constructions are broader than ours. If there are no further questions, I would ask that the district court's instructions be affirmed. Thank you, counsel. Ms. McComas has three minutes to rebuttal. Yes, sir. In respecting my time, I'll go very quickly. With respect to your question about Figure 11 and the suggestion that it was read out, to be clear, Figure 11 is referenced specifically as tile-to-mortar-to-edge, the embodiment of it, in the patent specification itself. It's in Column 6. I know that, but again, the patent specification was written before the amendments. And I think I understood. Mr. Mann has to have pointed to an area where edge first made its appearance, which was earlier on in the prosecution history.  It's at 702. Right. And there's nothing in there that suggests edge-to-mortar-to-subfloor contact at the first and second notches. That's right. But the point is that at the time in which Figure 11 first made its appearance, which was in the original application, there was no reference in the claims to edge at all, right? That's right. So your argument that, well, you know, edge was in there from the beginning, and it was struck but just modified, isn't really quite accurate. Well, but it's clearly contemplated, right, because that's where I'm headed, is that you have in Column 6, Appendix 122, similarly in a two-tile implementation, for example, each tile has edge-to-subfloor contact due to the notches. So that was already called out. So correct. The language, this specific language, was added at the earlier amendment. But it doesn't change. It's not a modification to what was already disclosed in the specification. Figure 11 was already... Not claimed in the patent. Not claimed in the claims. At the original? Is that what you mean? Right. Which is the point at which Figure 11 was first put into the... Right. So I'm not arguing with you. I'm just trying to understand the concern. That we added the language, the specific language, with edge-to-subfloor contact at the second notch, but that doesn't change that the one reference we have in the patent that reflects that, and that when we added that term, it was consistent with our specification, which you would expect it to be. But if you make an amendment to the claims and you narrow the scope of what you're claiming, but the specification, which was pre-amendment, includes some embodiment that has clearly been excluded by the amendment, then you can't go back to the embodiment and say, Aha, there's what we mean. Never mind the amendment that was made. I think the problem I'm having is I'm not reading that as clearly excluding what came before. It doesn't say very edge. I mean, it begs the question of what we're talking about, right? Because then we have, during the prosecution history, an extensive video, thank you so much for watching it, that lays out specifically our product, which we think is our commercial embodiment of what we're claiming in these claims, and it does the same thing. It doesn't go to the very edge. The commercial embodiment in the video looks like it, only the neck of the device only covered the groove where the grout goes, as far as I can see. That's in the... Maybe 1080. That's viewed at 760 and 1080 as well. If you look at that picture, that looks like the device within, to the extent that one can tell, the neck of the red device is covering the groove. It isn't covering any considerable portion of the rest of the tile. You say considerable portion. It's covering some portion of it. I can't tell that. You can because at that same page, I'm sorry, that sounded argumentative, not intended to be. That's all right. This is your job. This would be edge to mortar to subfloor direct contact. In other words, minimal interruption of the plastic at the assembly. So even that page has some reference. If I can just close very quickly. You may close because we've come to the edge of you a lot of times. But not the line. Just very quickly, to be clear, what we're asking for here is vacature on both. There is a proposed plain construction on majority of the edge. Majority of the area. What we advocated for below with respect to edge was a plain and ordinary meaning, as one in the art would understand it. Thank you so much. Thank you to both counsel. The case is submitted.